# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

CURTIS PARKS,

    Petitioner,                      CASE NUMBER: 05-CV-10036-BC

v.

                                    DISTRICT JUDGE DAVID M. LAWSON

MILLICENT WARREN,             MAGISTRATE JUDGE CHARLES BINDER

    Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

### I.    RECOMMENDATION

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED.**

### II.    REPORT

**A.    Introduction**

Pending, pursuant to an order of reference issued November 28, 2005, by U.S. District Judge David M. Lawson (Dkt.18), is the instant petition filed February 2, 2005. (Dkt.1.) Petitioner Curtis Parks, a Michigan state prisoner currently confined at the Thumb Correctional Facility in Lapeer, Michigan, filed a Petition for Writ of Habeas Corpus. The petition raises three claims challenging Petitioner's 2001 state court convictions. Respondent filed a response to the petition on August 8, 2005 (Dkt.6), and the Rule 5 materials were received on August 25, 2005. (Dkts.8-17.) Petitioner did not file a reply. Pursuant to E.D. Mich. LR 7.1(e)(2), the petition is ready for Report and Recommendation without oral argument.

**B. Factual Background**

The statement of facts set forth below was stipulated to by the prosecution and defendant on appeal in the state court and has been reiterated and accepted by the Respondent in this case:

> The prosecution maintained that complainant Beverly Johnson admitted Curtis Parks into her apartment after he requested to use her telephone, and, once inside, he vaginally penetrated her twice and forced her to perform oral sex on him once. The defense maintained that Ms. Jefferson invited Mr. Parks into her apartment, and that sexual acts were consensual.
>
> Just prior to opening statements, the defense objected to admission of a photograph of Mr. Parks that was taken at the county jail right after his arrest on April 22, 2001. The defense referred to the photograph as a 'mug shot,' said that it made Mr. Parks look like a 'thug,' and argued that its admission would be more unfairly prejudicial than probative. The prosecution contended that the photograph was relevant because Mr. Parks looked like he was falling asleep, and the complainant said that Mr. Parks fells [sic] asleep while he was in her apartment. The court ruled that the photo was admissible, but directed that only Mr. Park's [sic] name could appear at the bottom of the photo. Other words, such as 'Sheriff's Department - Inmate Press Release,' were removed from the photo. (T II 4-8.)
>
> The photo was introduced into evidence at trial through the testimony of Grand Rapids police officer Michael Hearing, who transported Curtis Parks from the Jefferson apartment to the county jail. Officer Hearing testified that Mr. Parks looked tired or 'out of it,' and he thought Mr. Parks might be high. The defense objected to admission of the photo. (T II 31-34.)
>
> Complainant Beverly Johnson testified that Mr. Parks knocked on her door on the morning of April 22, 2001, and asked to use her telephone. After she allowed him to do so, she told him it was time to leave, and he walked over to her and hit her twice in the mouth. He ordered her to lie on the floor where he vaginally penetrated her. Ms. Jefferson testified that when she got up to go to the bathroom, she was able to grab a knife from her kitchen, but after Mr. Parks threatened to tear up her apartment, she eventually turned the knife over to him. (T II 59-65.) Ms. Jefferson said that Mr. Parks told her he had been watching her for a long time, and he vaginally penetrated her a second time and forced her to perform one act of oral sex. He successfully attempted anal penetration. He fell asleep and she called 911. (T II 66-69.) Ms. Jefferson testified that when Mr. Parks woke up, he began to rape her again. When the police arrived and knocked her door down, Mr. Parks was on top of her on the living room floor with his pants pulled down. (T II 70-71.)
>
> Ms. Jefferson testified that she used the medication Paxil, Zyprexa and Topamax and had been drinking beer on the evening before this incident. (T II 114.)

2

>   Grand Rapids police officer Michael LaFave was dispatched to the apartment and was knocking on the apartment door when he heard a bumping noise and then a scream. He kicked the door in and found a woman on the floor with a man on top of her doing 'something sexual.' The man's pants were at his knees. (T II 129.) The man lunged at Officer LaFave as the officer attempted to handcuff him. (T II 130.)
>
>   Sexual assault nurse Suzanne Reiter testified that when she saw Ms. Jefferson on April 22, Ms. Jefferson had sutures on her mouth and her mouth was swollen. She had two lacerations, one to the vaginal opening and one to the posterior fourchette, and she was experiencing some anal bleeding. (T II 38-41, 51.)
>
>   Dr. Brian Butler treated Ms. Jefferson in a hospital emergency room on April 22 for lacerations to the face requiring stitches. He did not question her about why she was taking certain medication, but he testified that Paxil and Zyprexa are normally prescribed for depression and Topamax is sometimes prescribed for seizure disorders. (T III 11-12.)
>
>   Detective Leslie Smith questioned Curtis Parks at the jail after the arrest. He testified that Mr. Parks told him that Beverly Jefferson flagged him down on the street and asked him for cocaine. He replied that he had no cocaine but that he had ten dollars. She offered to have sex with him for the ten dollars, which was the total of the amount of money he said that he had, and they went inside. Mr. Parks said that after the sexual acts were completed, he did fall asleep, but that he was dressed and standing in the living room by the time the police arrived. Mr. Parks said that he had drunk three 22-ounce beers before his encounter with Ms. Jefferson. (T III 41-44.)
>
>   Mr. Park's [sic] own trial testimony was consistent with the testimony of Detective Smith concerning what Mr. Parks had told him except that Mr. Parks testified that after he woke up, Ms. Jefferson accused him of lying about the amount of money he had. He then told her that he would pay her twenty dollars instead of ten, and they got down on the living room floor. She began to scream, and the police kicked the door down. Mr. Parks testified that he was high on marijuana at the time of the incident. (T III 88, 98.)

(Rule 5 Mat., Dkt. 17, Defendant-Petitioner's Br. on Appeal, stipulated to by Plaintiff-Respondent, Mich. Ct. App. No. 239728 at 1-3.)

**C.     Procedural History**

Petitioner was charged with three counts of criminal sexual conduct in the first degree in violation of MICH. COMP. LAWS 750.520b(1)(f)(penetration by force or coercion). Following a jury trial, on October 18, 2001, Petitioner was convicted on all counts. On November 29, 2001, Petitioner was sentenced to 15-40 years on each of the three convictions, to be served concurrently and not consecutively.

On September 11, 2002, Petitioner filed, through counsel, an appeal of right with the Michigan Court of Appeals, raising the following claims:

   I.   WHEN KENT COUNTY HAS ACKNOWLEDGED PUBLICALLY THAT BECAUSE OF AN ERROR IN ITS COMPUTER SYSTEM, NEARLY SEVENTY-FIVE PERCENT OF THE COUNTY'S ELIGIBLE JURORS WERE BEING EXCLUDED FROM JURY POOLS DURING THE TIME WHEN JURORS WERE SELECTED IN THIS CASE, AND THEY WERE BEING EXCLUDED IN A MANNER THAT RESULTED IN AN UNDERREPRESENTATION OF AFRICAN-AMERICANS, WAS DEFENDANT DENIED HIS CONSTITUTIONAL RIGHT TO A JURY DRAWN FROM A VENIRE REPRESENTATIVE OF A FAIR CROSS-SECTION OF THE COMMUNITY?

   II.  AFTER ESTABLISHING ON REMAND THAT SOME AFRICAN-AMERICANS WERE REPRESENTED IN THE JURY VENIRE IN THIS CASE IN SPITE OF KENT COUNTY'S ADMISSION THAT A COMPUTER ERROR RESULTED IN UNDERREPRESENTATION OF CITY RESIDENTS, DID THE PROSECUTOR PEREMPTORILY CHALLENGE THOSE AFRICAN AMERICANS BASED ON RACE IN VIOLATION OF THE FOURTEENTH AMENDMENT, AND WAS DEFENSE COUNSEL INEFFECTIVE FOR FAILING TO CHALLENGE THE ACTIONS OF THE PROSECUTOR?

   III.  DID THE COURT ABUSE ITS DISCRETION WHEN IT PERMITTED THE PROSECUTION TO INTRODUCE A 'MUG SHOT' PHOTOGRAPH OF DEFENDANT WHEN THE PHOTO WAS PREJUDICIAL BUT HAD NO PROBATIVE VALUE UNDER THE FACTS OF THIS CASE?

(Rule 5 Mat., Dkt. 16, Appellant's 9/11/2002 Br. on Appeal, Mich. Ct. App.) On August 14, 2003, the Court of Appeals for the State of Michigan affirmed in a four-page unpublished opinion. (Rule 5 Mat., Dkt. 17, *Mich. v. Parks*, No. 239728 (Mich. Ct. App. August 14, 2003).)

Petitioner thereafter filed an Application for Leave to Appeal with the Michigan Supreme Court, raising exactly the same issues as raised in the Michigan Court of Appeals.

On February 27, 2004, the Michigan Supreme Court denied leave to appeal, because the Court was "not persuaded that the questions presented should be reviewed." (*Id.*) The instant Petition for Writ of Habeas Corpus followed, raising the following grounds for relief:

> I.  WHEN KENT COUNTY HAS ACKNOWLEDGED PUBLICALLY THAT BECAUSE OF AN ERROR IN ITS COMPUTER SYSTEM, NEARLY SEVENTY-FIVE PERCENT OF THE COUNTY'S ELIGIBLE JURORS WERE BEING EXCLUDED FROM JURY POOLS DURING THE TIME WHEN JURORS WERE SELECTED IN THIS CASE, AND THEY WERE BEING EXCLUDED IN A MANNER THAT RESULTED IN AN UNDERREPRESENTATION OF AFRICAN-AMERICANS, WAS PETITIONER DENIED HIS CONSTITUTIONAL RIGHT TO A JURY DRAWN FROM A VENIRE REPRESENTATIVE OF A FAIR CROSS-SECTION OF THE COMMUNITY?
>
> II. DID AFTER ESTABLISHING AT AN EVIDENTIARY HEARING THAT SOME AFRICAN AMERICANS WERE REPRESENTED IN THE JURY VENIRE IN THIS CASE IN SPITE OF KENT COUNTY'S ADMISSION THAT A COMPUTER ERROR RESULTED IN UNDERREPRESENTATION OF CITY RESIDENTS PETITIONER WILL SEEK TO SHOW THAT THE PROSECUTOR PEREMPTORILY CHALLENGED THOSE AFRICAN-AMERICANS BASED ON RACE IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT, AND WAS PETITIONER'S TRIAL COUNSEL INEFFECTIVE FOR FAILING TO CHALLENGE THE ACTIONS OF THE KENT COUNTY PROSECUTOR?
>
> III. DID THE TRIAL COURT ABUSED [SIC] IT'S [SIC] DISCRETION WHEN IT PERMITTED THE PROSECUTION TO INTRODUCE A 'MUG SHOT' PHOTOGRAPH OF PETITIONER WHEN THE PHOTO WAS PREJUDICIAL BUT HAD NO PROBATIVE VALUE UNDER THE FACTS OF THIS CASE AND VIOLATE THE PETITIONER'S RIGHT TO DUE PROCESS?

(Pet., Dkt. 1 at iv.)

Respondent contends that the petition should be denied because Petitioner failed to object at the trial court level as to claims I and II and has not demonstrated cause and prejudice to excuse his procedural default. Respondent also argues that Petitioner's claims all fail on substantive grounds as well.

**D.	Law and Analysis**

**1.	Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied,* 518 U.S. 1047, 117 S. Ct. 25, 135 L. Ed. 2d 1119 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112, 118 S. Ct. 1044, 140 L. Ed. 2d 109 (1998). The current standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See Id.* at 1521-22.

Pursuant to the AEDPA, this Court must presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998); *see also* 28 U.S.C. § 2254(e)(1).

**2.     Habeas Claims I and II**

Respondent contends that these two claims are procedurally forfeited because neither were raised at the trial court level and because at trial Petitioner expressed satisfaction with the jury selected. (*See* Rule 5 Mat., Dkt. 11, Trial Tr. Vol. I at 112.) The Michigan Court of Appeals held that Petitioner had "forfeited appellate consideration of the issue" despite Petitioner's argument that the error in the selection process could not have been discovered earlier. (Rule 5 Mat., Dkt. 16, *Mich. v. Parks*, No. 239728 at 1 (Mich. Ct. App. August 14, 2003); Pet'r.'s Br. on Appeal, Dkt. 16 at 4.) In addition, the Michigan Court of Appeals held that Petitioner had failed to develop a

record in the trial court regarding the government's use of peremptory challenges and had "forfeited this issue." (*Id*. at 1-2.)

When the state asserts a procedurally defaulted claim, the court must determine whether: 1) there is an applicable procedural rule that Petitioner failed to follow; 2) the state court enforced its procedural sanction; 3) the state's procedural forfeiture is an "adequate and independent" ground upon which the state can rely to foreclose review of a constitutional issue; and 4) the Petitioner can demonstrate "cause" justifying neglect of the procedural rule and "prejudice" actually resulting from the alleged constitutional error. *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "Whether a state court rested its holding on procedural default so as to bar federal habeas relief is a question of law that we review de novo [and] in answering this question, we look to the 'last *explained* state-court judgment.'" *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)(internal citations omitted).

Michigan courts do not review unpreserved issues, including constitutional issues, unless a "plain error" affected "substantial rights." *People v. Eccles*, 260 Mich. App. 379, 385 (2004)(applying rule to alleged Sixth Amendment fair cross section and Fourteenth Amendment *Batson* errors), accord *People v. Carines*, 460 Mich. 750, 763 (1999).

In the instant case, the Michigan Court of Appeals applied the procedural rule and enforced its sanction against Petitioner's Sixth Amendment fair cross-section and Fourteenth Amendment claim that the government's exercise of its peremptory challenges denied him equal protection. (Rule 5 Mat., Dkt. 16, *Mich. v. Parks*, No. 239728 at 1-2 (Mich. Ct. App. August 14, 2003) finding Petitioner "forfeited appellate consideration of [fair cross-section] issue" and that Petitioner had also "forfeited [the peremptory challenge] issue." (*Id*.) In addition, I suggest that this procedural

rule is an "adequate and independent" ground upon which the state can rely to foreclose review of a constitutional issue.

The sole remaining question, then, is whether Petitioner has demonstrated "cause" justifying neglect of the procedural rule and "prejudice" actually resulting from the alleged constitutional error. *Greer,* 264 F.3d at 673. I suggest that he has not.

The "cause" question raises no serious issues with respect to the government's use of peremptory challenges. If there were any racially motivated use of peremptory challenges, such usage would be unfolding before Petitioner's eyes and there would be no excuse not to object contemporaneously.[1] Therefore, I suggest that Petitioner cannot show cause for his failure to meet Michigan's procedural requirement and that review of the government's use of peremptory challenges, i.e., *Batson* analysis, is foreclosed.

On the other hand, the question of whether Petitioner had "cause" to fail to object to the process by which the jury venire was created is a closer question. Petitioner has alleged that he was not aware of the Kent County selection process until after the news stories broke on the topic in the summer of 2002. The stories indicated that because of a computer error, the county or suburban residents were overrepresented, and the city of Grand Rapids residents were underrepresented. The black population in the city of Grand Rapids is greater than it is in the county as a whole.

Michigan courts have not been persuaded to review jury venire questions in virtually identical situations. In *People v. McKinney*, 258 Mich. App. 157, 161-62 (2003), the Michigan Court of Appeals declined to address a challenge to the jury venire based on the same jury

---

[1] Although Petitioner did assert ineffective assistance of counsel in the state court, that issue was not raised in the instant petition, and therefore is not before this Court.

9

selection process in Kent County because no objection was made at trial, finding sufficient allegations of plain error affecting substantial rights had not been made. Accord *People v. Terrell,* No. 243097, 2004 WL 1254310 (Mich. Ct. App. June 8, 2004) (unpublished )(where no objection was made until sentencing, appeals court would not review the Kent County jury venire question, finding insufficient evidence of plain error affecting substantial rights), *People v. Green*, No. 242230, 2003 WL 22800972 (Mich. Ct. App. November 24, 2003) (unpublished)(holding appellate review forfeited where no objection made at trial to Kent County jury selection process and resulting venire), *People v. Barnes*, No. 244590, 2004 WL 1121901 (Mich. Ct. App. January 15, 2004) (unpublished)(holding challenge to Kent County jury venire waived where no objection was made at trial to all white jury despite defendant's argument that the alleged unconstitutional jury selection process could not be identified at the time of trial).

I find Petitioner's argument that Kent County's jury venire process was unknown to him prior to 2002 somewhat sympathetic under the "cause" inquiry; however, I suggest that review is foreclosed because Petitioner cannot show resulting prejudice from any alleged constitutional error. *Greer,* 264 F.3d at 673. I further suggest that there was ample physical and testimonial evidence supporting the verdict so any alleged error would not have affected the outcome.

For the above reasons, I suggest that Petitioner is not entitled to review of the alleged Sixth Amendment fair-cross section or equal protection (*Batson)* issues because they are procedurally defaulted.

In the event the Court finds these claims not procedurally defaulted, and proceeds to the merits, for the sake of judicial economy on review, I suggest that Petitioner has not established even a *prima facie* violation of his Sixth Amendment rights.

10

As to Petitioner's first habeas claim,[2] to establish a *prima facie* violation of the Sixth Amendment's right to a jury representing a fair cross section of the community, Petitioner must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community [cognizable prong]; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community [underrepresentation prong]; and (3) that underrepresentation is due to systematic exclusion of the group in the jury-selection process [systematic exclusion prong]." *United States v. Ovalle*, 136 F.3d 1092, 1098, n.7 (6th Cir. 1998), citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668-69, 58 L. Ed. 2d 579 (1979). If a *prima facie* violation is established, the government is required to show that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group"in order to rebut the presumption. *Duren*, 439 U.S. at 367-68.

The Michigan courts that have substantively addressed the same jury venire process have concluded that no underrepresentation has been shown or that the exclusion is not systematic. *People v. Bryant*, No. 241442, 2004 WL 513664 (Mich. Ct. App. March 16, 2004) (unpublished)(finding absolute disparity in Kent County jury selection process to be 5.08% and holding that this percentage did not represent a substantial underrepresentation for Sixth Amendment fair cross-section purposes); *People v. Warren*, No. 237891, 2003 WL 22928850 (Mich. Ct. App. December 11, 2003) (unpublished)(holding that defendant's challenge to the Kent County jury venire could not succeed because there was no evidence of intentional discrimination).[3]

---

[2]Petitioner did not raise a Fourteenth Amendment equal protection argument with respect to the jury venire.

[3]The Michigan Court of Appeals cited *Miller-El v. Cockrell*, 537 U.S. 322, 328-29, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003), as requiring a showing of purposeful discrimination in a fair cross-section, Sixth

The United States District Court for the Western District of Michigan has considered the same jury venire process and has concurred.  *Smith v. Berghuis*, No. 1:03-CV-87, 2006 WL 461248 (W.D. Mich., February 23, 2006).  In *Smith, supra*, the court held that the "disparities in *Duren* were much greater than those at issue in Petitioner's case, and nothing in *Duren* indicates that the disparities in the instant case are so significant that the percentage of African-Americans in the juror pool was not 'reasonably representative' of the community." (*Smith* at 2.)  The court also noted that the Supreme Court has not proscribed use of any particular test so that the state court's use of the "absolute disparity" test to measure representation was reasonable. *Id.*  Finally, the court upheld the state court's conclusion that any underrepresentation was not systematic. *Id.*[4]

I therefore suggest that Petitioner has not shown any reason to depart from the above decisions finding no error rising to the level of a constitutional violation in the Kent County jury venire.  As to Petitioner's second habeas claim, I suggest Petitioner has not provided any evidence to support his claim that the government used peremptory challenges to unconstitutionally exclude blacks from the jury.

*Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), established a three-step process for evaluating claims that the government used peremptory challenges in violation of the Fourteenth Amendment's Equal protection Clause.

> To establish a [sic] equal protection violation under *Batson*, the claimant must first establish a *prima facie* case of racial discrimination.  If the claimant establishes a *prima facie* case, the party exercising the peremptory challenge must proffer a race-neutral explanation.  This non-racial explanation 'need not be particularly persuasive, or even plausible, so long as it is neutral.'  After the defending party

---

Amendment jury selection claim.  However, the language cited was from a portion of the Court's opinion regarding an equal protection/*Batson* claim based on the government's use of peremptory challenges.

[4]The Michigan Supreme Court gave Smith the "benefit of the doubt on unfair and unreasonable underrepresentation," but found Smith failed to show systematic exclusion.  *People v. Smith*, 463 Mich. 199, 203 (2000).

offers its race-neutral justification, the challenging party must demonstrate that the proffered explanation is merely a pretext for a racial motivation. As with discrimination claims generally, the ultimate burden of persuasion always rests with the party challenging the peremptory.

*McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 521 (6th Cir. 2001)(internal citations omitted).

In the instant case, Petitioner has conceded that "the existing record does not reflect how man [sic] African-Americans, if any, were in the jury pool or ultimately served on the jury." (Rule 5 Mat., Dkt. 16, Pet'r.'s Br. on Appeal at 10; Pet. at 25.) Nor does Petitioner describe how the prosecution utilized its peremptory challenges, if it even exercised them at all. Without such evidence, I suggest that Petitioner cannot establish a *prima facie* case and is not entitled to habeas relief on this ground.

### 3.     Habeas Claim III

Petitioner contends that admission of a mug shot into evidence was improper and entitles him to habeas relief. Respondent contends that this evidentiary issue cannot provide grounds for habeas relief because admission of the mug shot did not violate due process, that no error occurred and even if it had, no habeas relief may be granted on this ground because it did not have a substantial influence or effect on the determination of Petitioner's guilt at trial.

The Michigan Court of Appeals addressed this issue as follows:

> Defendant next argues that the trial court abused its discretion when it admitted into evidence a 'mug shot' photograph of defendant that was prejudicial and had no probative value. Reviewing the trial court's decision to admit a photograph into evidence for an abuse of discretion, we disagree.
>
> In order to determine whether the trial court abused its discretion, this Court must determine whether the evidence is relevant pursuant to MRE 401, and whether the evidence, if relevant, should be excluded pursuant to MRE 403.

13

Evidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Further, evidence that enhances a witness' credibility is material. 'If a witness is offering relevant testimony, whether that witness is truthfully and accurately testifying is itself relevant because it affects the probability of the existence of a consequential fact.'

We conclude that the photograph was material because it enhanced the victim's credibility. The prosecutor introduced the photograph because it depicts defendant as being 'rather tired' at the time of his arrest, and thus corroborates the victim's testimony that defendant fell asleep during the commission of a criminal sexual assault. Even though the fact that defendant fell asleep was itself uncontradicted, the jury was required to determine whether it found defendant's version of events or the victim's version of events more credible. Because the photograph enhanced the victim's credibility by making her seemingly farfetched testimony that defendant fell asleep during a criminal sexual assault more believable, it was both material and probative of the victim's credibility. Accordingly, we conclude that the challenged photograph was relevant.

MRE 403 governs the exclusion of evidence and provides that '[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....' In *Sclafani v. Peter S. Cusimano, Inc.*, this Court explained the meaning of unfair prejudice as follows:

> 'Unfair prejudice does not mean 'damaging.' Any relevant testimony will be damaging to some extent. We believe that the notion of 'unfair prejudice' encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of 'prejudice' exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it.

Here, the photograph at issue is not merely 'marginally probative' because its portrayal of defendant corroborates the victim's testimony that he was dozing off during one of the assaults, thereby enhancing the victim's credibility. Further, there is no danger that the jury would give this photograph undue or preemptive weight because it is not a photograph that would inflame the jury's passions to a degree that the jury would convict defendant on that basis. The mere fact that defendant looks sleepy in the photograph would not cause a jury to convict defendant. In addition, because the photograph does not inflame the jury's passion, and because a party may use photographs to corroborate a witness' testimony, it was not inequitable to allow

14

>    the prosecutor to use this evidence.  Thus, the photograph should not have been excluded under MRE 403 because its probative value was not substantially outweighed by the danger of unfair prejudice.
>
>    The trial court's decision to admit the challenged photograph did not constitute an abuse of discretion.  The photograph was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice.  Accordingly, we find no merit to defendant's argument.

(Rule 5 Mat., Dkt. 16, *Mich. v. Parks*, No. 239728 at 2-3 (Mich. Ct. App. August 14, 2003)(internal citations omitted).)

Habeas relief is limited to allegations of error that "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  In the evidentiary context, a habeas Petitioner must show that admission of the evidence rendered the trial fundamentally unfair such that his due process rights were violated.  *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000).

The mug shot that was admitted into evidence was redacted to remove any references other than the Petitioner's name.  Although it appears to me that the photograph's probative value bordered on the marginal since Petitioner's sleeping was "uncontradicted," in light of the physical and testimonial evidence against Petitioner, I suggest its admission could not rise to the level of fundamental unfairness.  *See Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003)(finding admission of a mug shot which showed defendant wearing jacket matching witness's description of man seen running near crime scene was not in error and would not provide ground for habeas relief).  Accordingly, I recommend that habeas relief be denied on this ground as well.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ *Charles E Binder*
 CHARLES E. BINDER
Dated: April 17, 2006                 United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Brenda E. Turner, and served in the traditional manner on Curtis Parks and Honorable David M. Lawson..

Dated: April 17, 2006                 By       s/Mary E. Dobbick
                                      Secretary to Magistrate Judge Binder