UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS PARKS,

                Petitioner,                      Case Number 05-10036
                                                        Honorable David M. Lawson

v.

MILLICENT WARREN,

                Respondent.

_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING
IN PART PETITION FOR WRIT OF HABEAS CORPUS, AND REFERRING
MATTER TO MAGISTRATE JUDGE FOR APPOINTMENT OF COUNSEL
AND AN EVIDENTIARY HEARING ON REMAINING HABEAS CLAIM**

Petitioner Curtis Parks, who currently is confined at the Ryan Correctional Facility in

Detroit, Michigan, filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

on February 2, 2005. In October 2001, the petitioner was convicted by a jury of three counts of first-

degree criminal sexual conduct in the Kent County, Michigan circuit court. He was sentenced to

concurrent terms of fifteen to forty years in prison on all three counts, and after his direct appeals

in the state courts, he filed the present petition. This matter was referred to Magistrate Judge

Charles E. Binder, who issued a report on April 17, 2006 recommending that the petition be denied.

The petitioner filed three timely objections to the report and recommendation, only one of which

warrants extended discussion. This matter is now before the Court for *de novo* review.

I.

The magistrate judge thoroughly set forth the facts of the case, which were taken from a

stipulation by the parties in the state appellate court, and they need not be repeated here as neither

party objected to that part of the magistrate judge's report. It is sufficient to know that the petitioner

had sexual intercourse with the victim in her apartment in Grand Rapids, Michigan on April 22, 2001.  The victim testified that the petitioner assaulted her and penetrated her three times; the petitioner asserted the sex was consensual and done in exchange for money.  The jury preferred the victim's version of the events over the petitioner's and it convicted him of three counts of first-degree criminal sexual conduct.  He was sentenced on November 29, 2001.

The petitioner filed a direct appeal in the state court of appeals.  Between the time of sentencing and the appeal, a story appeared in *The Grand Rapids Press* detailing a computer "glitch" in the Kent County juror selection system.  The computer system had inadvertently excluded nearly 75% of the county's 454,000 eligible jurors from potential jury pools since the spring of 2001.  During this time period, the majority of jurors selected came from the suburbs of Grand Rapids, which racially is overwhelmingly white, to the exclusion of many black citizens from Grand Rapids proper.  According to a July 30, 2002 article in *The Grand Rapids Press*:

> W. David Boehm, director of the county's computer technology department, explained that with only one quarter of the names and addresses to choose from, the computer automatically selected a correct proportion of jurors from each of the county's zip codes.
>
> Then, when the computer noticed the need for hundreds more jurors, it started selecting again from the top of the list - the lowest numbered zip codes that happen to serve the county's outlying areas.  Filling out the needed number, the computer usually stopped at zip code 49505 and never again reached zip codes that cover the county's most dense population areas
>
> The result: more jurors than required were summoned from places such as Rockford and Cannon Township while fewer jurors than expected were summoned from inner-city Grand Rapids.  Walker, Kentwood and parts of Wyoming also were under-represented.
>
> "We clearly screwed up in that data entry but didn't know it," Boehm said.

Pet., Ex. D, Doug Guthrie & Kyla King, "Kent Admits Glitch in Jury Selection," *The Grand Rapids Press* (July 30, 2002). This "glitch" has been discussed in other state appellate decisions, *see, e.g., People v. Bryant*, 2004 WL 513664, *4 (Mich. App. 2004); *People v. Perdue*, 2004 WL 257256, *2 (Mich. App. 2004); *People v. Barnes*, 2004 WL 1121901,*2 (Mich. App. 2004), and the State does not appear to take issue with these facts.

After learning of this irregularity, the petitioner raised a challenge to the jury selection procedure on appeal, contending that his Sixth Amendment right to a jury drawn from a venire representative of a fair cross-section of the community was abridged. He also alleged: his rights under the Due Process Clause were violated by the prosecutor's impermissible use of peremptory challenges to exclude African Americans from the petit jury; ineffective assistance of counsel because his trial attorney failed to assert that *Batson* challenge; and an abuse of the court's discretion for allowing the admission of a prejudicial "mug shot" that had no probative value. The court of appeals affirmed his convictions. Speaking to the challenge to the jury array, the court held that the petitioner "failed to preserve his challenges to the venire and the jury selection process because he did not object to the jury array before the jury was impaneled and sworn." *People v. Parks*, 2003 WL 21958299, *1 (Mich. App. Aug. 14, 2003).

The petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same issues. On February 27, 2004, the Michigan Supreme Court denied leave to appeal. *People v. Parks*, 469 Mich. 1012, 677 N.W.2d 27 (2004) (unpublished). The petitioner's *pro se* habeas petition in this Court followed.

The habeas petition raises three issues. First, the petitioner repeats the challenge to the assembly of the jury array as violating his Sixth Amendment right to a fair and impartial jury. Next

the petitioner asserts that the Kent County prosecutor abused the jury selection process by using his peremptory challenges to exclude African-Americans from the jury, and the petitioner's trial counsel was ineffective for failing to mount a timely objection. Third, the petitioner contends that he was denied a fair trial when the state court allowed the prosecutor to introduce a mug shot in evidence when that photograph was not probative but was unfairly prejudicial. The magistrate judge noted that the state courts held that the petitioner had forfeited his first two claims in state court by failing to make timely objections. He also found that the state's procedural rule was an adequate and independent state law ground for the decision, which precluded review of the federal claim in this court unless the petitioner could establish cause for the failure to abide by state procedures and actual prejudice from the constitutional violation. With respect to cause, the magistrate judge was "sympathetic" to the petitioner's plight of not learning of the computer glitch until his case was in the court of appeals, but he found no actual prejudice resulting from the systemic irregularity in the selection of jury pools. He found no cause or prejudice that would save the petitioner's *Batson* issue.

The magistrate judge also discussed the merits of the jury array issue and concluded that the petitioner failed to demonstrate that minority groups were under-represented in the jury array and that the exclusion of minority groups was systematic. He concluded that even absent procedural default on this issue, the petitioner was not entitled to relief.

On the issue of admission of the mug shot, the magistrate judge noted that state law evidence issues do not give rise to federal habeas intervention unless the admission of the evidence rendered the trial fundamentally unfair. Concluding that the admission of the mug shot did not so taint the trial, the magistrate recommended that relief be denied on this issue as well.

## II.

The petitioner objected to all three of these conclusions.

### A.

Taking the objections in reverse order, the petitioner argues that the mug shot admitted into evidence was unduly prejudicial and that its probative value was minimal. The Court is satisfied, however, that the magistrate judge properly resolved this issue, and the Court adopts that portion of his report. An error of state law is not a ground for habeas corpus relief. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241 and *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). An evidentiary ruling violates a criminal defendant's due process rights only when it is "so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). The magistrate judge correctly concluded that the admission of the mug shot was not fundamentally unfair and did not violate the Constitution.

### B.

The petitioner objects to the conclusion that his *Batson* issue was procedurally defaulted. There is no dispute, however, that there was no objection at trial to the prosecutor's use of peremptory challenges to remove African-Americans from the jury. Michigan procedural rules require challenges to the use of peremptory challenges under *Batson v. Kentucky*, 476 U.S. 79

(1986), to be preserved by a contemporaneous objection. *See People v. Williams*, 174 Mich. App. 132, 137, 435 N.W.2d 469, 472 (1989) (holding that under state procedural law "a timely objection is necessary to preserve a *Batson* question for appellate review"). A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997). It will bar consideration of the merits of a federal claim if the state rule is actually enforced and is an adequate and independent ground for the state court's decision. *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

A procedural default can be excused by a showing of cause and prejudice, *Coleman*, 501 U.S. at 750, and the petitioner offers his trial attorney's ineffective assistance as cause for the lack of a contemporaneous objection. The magistrate judge did not address this argument in his report because he believed that the petitioner did not raise the issue in his petition. However, the petitioner included that claim in the statement of his second habeas issue.

Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006). However, to establish constitutionally ineffective assistance of counsel, the petitioner must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard

of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance means simply reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688 ).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

The petitioner has failed to establish that his trial attorney's performance was ineffective. He says that his attorney's failure to make a *Batson* challenge violated professional norms because the prosecutor used her peremptory challenges to excuse African-Americans from the petit jury. The petitioner has supplied affidavits from four people, three who identify themselves as African-Americans, who were peremptorily excused by the prosecutor, Pet., Exhibit G, Affidavits of Excused African-American Jurors: Ahmed Shabazz, Aria Moody, Melain Gipson, and Steven Vanhuizen, and he argues that the prosecutor's purpose for removing the African-American jurors

was racially based. But the petitioner has not provided any evidence whatsoever to support this claim. No *voir dire* transcript has been included with the exhibits. The affidavits of the excused jurors simply say that they were excused. To conclude that the prosecutor exercised peremptory challenges on the base of race requires pure speculation. The petitioner has not provided the Court with any facts to support his allegation that the prosecutor acted improperly or that defense counsel's omissions amounted to deficient performance. "[E]rrors of tactics or omission do not necessarily mean that counsel has functioned in a constitutionally deficient manner." *Greer v. Mitchell*, 264 F.3d 663, 677 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002). Therefore, the Court must conclude that the petitioner has not established cause for the procedural default on his *Batson* claim.

The Court agrees with the magistrate judge that this state procedural rule was an adequate and independent ground for the state court's ruling on this issue. The Court, therefore, will adopt the part of his report rejecting the *Batson* claim.

## C.

The Court cannot conclude, however, that the claim that the petitioner was denied a fair jury pool was procedurally defaulted, at least not on the present record. Assuming without deciding that the state's rule requiring an objection to the jury array prior to the jury being sworn is a firmly-establish state procedural rule that is regularly followed, *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), the Court believes that the petitioner has shown both cause and prejudice that excuse his failure to abide by that rule.

The magistrate judge was "somewhat sympathetic under the 'cause' inquiry," R&R at 10, and with good reason. The petitioner could not have known of Kent County's computer deviation at or before the time of jury selection. County officials did not even know about it, having

discovered it several months after the petitioner's trial. "A habeas petitioner shows 'cause' where he demonstrates that he failed to raise a constitutional issue because it was 'reasonably unknown to him' at the time." *Fautenberry v. Mitchell*, 515 F.3d 614, 629 (6th Cir. 2008) (quoting *Amadeo v. Zant*, 486 U.S. 214, 222 (1988)); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) ("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). The petitioner has established cause.

The nature of the error – the denial of a jury pool comprised of a fair cross-section of the community – can only be characterized as a structural error, for which prejudice is presumed. The Supreme Court has explained:

> In *Arizona v. Fulminante*, 499 U.S. 279 (1991), we divided constitutional errors into two classes. The first we called "trial error," because the errors "occurred during presentation of the case to the jury" and their effect may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." *Id.* at 307-308 (internal quotation marks omitted). These include "most constitutional errors." *Id.* at 306. The second class of constitutional error we called "structural defects." These "defy analysis by 'harmless-error' standards" because they "affec[t] the framework within which the trial proceeds," and are not "simply an error in the trial process itself." *Id.* at 309-310; *see also Neder v. United States*, 527 U.S. 1, 7-9 (1999).

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-149 (2006).

In *Taylor v. Louisiana*, 419 U.S. 522 (1975), the Court held that "the Sixth Amendment affords the defendant in a criminal trial the opportunity to have the jury drawn from *venires* representative of the community[.]" *Id.* at 537 (emphasis added). When potential jurors are excluded from the jury pool on the basis of race, structural error occurs. *Vasquez v. Hillery*, 474 U.S. 254 (1986). The *Vasquez* Court discussed the presumption of error when African-Americans were improperly excluded from grand jury service, stating:

When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. Similarly, when a petit jury has been selected upon improper criteria or has been exposed to prejudicial publicity, we have required reversal of the conviction because the effect of the violation cannot be ascertained. S*ee Davis v. Georgia*, 429 U.S. 122 (1976) (per curiam); *Sheppard v. Maxwell*, 384 U.S. 333, 351-352 (1966). Like these fundamental flaws, which never have been thought harmless, discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless-error review.

[A] conviction cannot be understood to cure the taint attributable to a charging body selected on the basis of race. Once having found discrimination in the selection of a grand jury, we simply cannot know that the need to indict would have been assessed in the same way by a grand jury properly constituted. The overriding imperative to eliminate this systemic flaw in the charging process, as well as the difficulty of assessing its effect on any given defendant, requires our continued adherence to a rule of mandatory reversal.

*Id*. at 263-64.

To avoid the procedural default bar, a habeas petitioner claiming a structural error need not show actual prejudice. *Owens v. United States*, 483 F.3d 48, 64-65 (1st Cir. 2007) (holding that "a defendant who is seeking to excuse a procedurally defaulted claim of structural error need not establish actual prejudice"); *see also Sustache-Rivera v. United States*, 221 F.3d 8, 17 (1st Cir. 2000) ("If [an error] did constitute structural error, there would be per se prejudice, and harmless error analysis, in whatever form, would not apply."); *Becht v. United States*, 403 F.3d 541, 549 (8th Cir. 2005) (suggesting, but not deciding, that counsel's failure to raise a structural error on appeal would constitute per se prejudice); *McGurk v. Stenberg*, 163 F.3d 470, 475 (8th Cir.1998) (holding that where counsel's deficient performance resulted in structural error, prejudice will be presumed); *United States v. Canady,* 126 F.3d 352, 364 (2d Cir. 1997) (even though habeas petitioner had not raised public trial claim on direct appeal, deciding that he was entitled to relief because public trial claim is structural error). Because prejudice is presumed, the Court must reject the magistrate

judge's conclusion that the petitioner's failure to show actual prejudice required invocation of the procedural default bar.

The magistrate judge also discussed the merits of the jury venire claim. He relied on Michigan appellate cases to conclude that the flawed selection process in Kent County did not actually result in underrepresentation or systematic exclusion of racial minorities. For instance, he referred to *People v. Bryant*, 2004 WL 513664 (Mich. App. 2004), in which the court of appeals discussed the same problem with Kent County's "computer glitch," to support that proposition. However, in that case, the court held as follows:

> In this case, defendant properly preserved the issue below and plaintiff recognizes that "it is of course difficult to expect anyone to raise an issue where the factual basis for the issue is unknown at the time." Further, plaintiff admits that "the factual predicate underlying the defendant's assumptions was not a matter of public knowledge [at the time of defendant's trial] and not easily discernable." Given these circumstances, we find the appropriate remedy to be a remand to the trial court for an evidentiary hearing, which will allow defendant an opportunity to present evidence that the Kent County jury selection system resulted in systematic exclusion of African-Americans causing this group to be substantially underrepresented in defendant's jury venire. If defendant is able to make "a prima facie showing of an infringement of his constitutional right to a jury drawn from a fair cross section of the community, it is the State that bears the burden of justifying this infringement by showing attainment of a fair cross section to be incompatible with a significant state interest." If plaintiff cannot carry its burden, then defendant is entitled to a new trial.

*Bryant*, 2004 WL 513664 at *4 (footnote and citation omitted). The magistrate judge also cited *Smith v. Berghuis*, 2006 WL 461248 (W.D. Mich. 2006), to suggest that a federal court already has put its stamp of approval on the same Kent County jury selection system challenged here. But that case concerned a trial that occurred in 1993 in which the jury array was selected by a method different from the one in this case. *See People v. Smith*, 463 Mich. 199, 209 n.2, 615 N.W.2d 1, 5 n.2 (2000) (Cavanaugh, J., dissenting) (observing that "[s]ome time after [Smith] was tried, Kent

County changed this practice, and began requesting all names on the list, rather than a given number").

In *United States v. Allen*, 160 F.3d 1096 (6th Cir. 1998), the Sixth Circuit discussed the showing a criminal defendant must make to establish a *prima facie* violation of the Sixth Amendment resulting from the exclusion of racial groups from a jury pool:

> The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). In *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court held that a defendant may establish a *prima facie* fair cross-section violation by showing
>
> > (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
>
> *Id.* at 364. The government may rebut this *prima facie* case by showing that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group. *Id.* at 367-68.

*Id.* at 1103.

It appears from the present record that there is little dispute as to the first element, since African-Americans are a distinct group within the community. Likewise, the description of excluding citizens from geographic regions of the community indicates that it was accomplished through a flaw in a computer program that ignored those individuals in inner-city zip code zones "systematically." No one suggests that this was done purposefully, but intentionality is not an element of this type of structural error.

To prove the second element – underrepresentation – the Sixth Circuit has endorsed the "absolute disparity" method for determining whether "the representation of African-Americans on

venires is not 'fair and reasonable in relation to the number of [African-Americans eligible for jury service] in the community.'" *United States v. Forest*, 355 F.3d 942, 954 (6th Cir. 2004). "In the context of jury selection, one way to evaluate the fairness of representation is by calculating 'absolute disparity,' which refers to 'the difference between the percentage of a certain population group eligible for jury duty and the percentage of that group who actually appear in the venire.'" *Ibid.* (quoting *United States v. Greene*, 971 F. Supp. 1117, 1128 n.11 (E.D. Mich. 1997)).

The petitioner has not made such a showing, but he has not yet had an opportunity to do so. He had no opportunity to develop the issue in the state trial court because he had no knowledge of the system's flaws, and the state appellate courts refused to entertain the issue because the petitioner did not raise it in the lower court. The magistrate judge took no evidence on the matter, either. Under the federal habeas statute, an evidentiary hearing on a habeas claim may be held if a petitioner must establish "a factual predicate [for his claim] that could not have been previously discovered through the exercise of due diligence," and the facts, if shown, could establish actual prejudice. 28 U.S.C. § 2254(e)(2)(A)(ii), (B); *see also Sawyer v. Hofbauer*, 299 F.3d 605, 610 (6th Cir. 2002) (stating that an evidentiary hearing may be held when the petitioner "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing") (internal quotation marks omitted). In this case, the petitioner could not have learned of the jury selection error through the utmost exercise of diligence, and if the constitutional error is proven prejudice is presumed.

To properly adjudicate the petitioner's first habeas claim, therefore, the Court believes that an evidentiary hearing will be required. Due to the complexity of the issue, all parties and the Court

will best be served by the appointment of counsel to represent the petitioner on this issue. The matter will be referred to the magistrate judge to complete these tasks.

III.

The Court concludes that the magistrate judge correctly determined that the petitioner's claim relating to the *Batson* challenge is procedurally defaulted and the claim relating to the admission of the mug shot is without merit. However, an evidentiary hearing is required to resolve the claim that the petitioner was deprived of his right under the Sixth Amendment to a trial by a jury chosen from a fair cross-section of the community. Counsel will be appointed for the petitioner to assist in the presentation of that claim.

Accordingly, it is **ORDERED** that the petitioner's objections to the magistrate judge's Report and Recommendation [dkt #24] are **OVERRULED IN PART AND SUSTAINED IN PART**.

It is further **ORDERED** that the magistrate judge's Report and Recommendation [dkt #19] is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that claims two and three in the petition for a writ of habeas corpus are **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Charles E. Binder under the previous order of reference [dkt #18] to appoint counsel for the petitioner, to conduct an evidentiary hearing on the issues raised in claim one of the petition, and to prepare a report and recommendation.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 31, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 31, 2008.

s/Felicia M. Moses
FELICIA M. MOSES